Mr. Thomas B. Jubin, #5-2433
JUBIN & ZERGA LLC
P.O. Box 943
Cheyenne, WY 82003
Tel: (307) 637-4965
Fax: (307) 637-4788
tom@jubinzerga.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.   19-CR-26 |
| | ) | 21-CR-14 |
| IAN HORN, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT IAN HORN'S MOTION FOR ADMISSION OF NON-HEARSAY AND MEMORANDUM TO ALERT THE COURT OF EVIDENTIARY ISSUE

Defendant, Ian Horn, by his attorney, Thomas B. Jubin of Jubin & Zerga, LLC, hereby moves to prohibit the government from interfering with his defense by seeking to exclude evidence that may arguably be hearsay as to other defendant but is not hearsay as to Defendant Horn. Mr. Horn files this motion and memorandum to alert the Court to these evidentiary matters likely to arise at trial.

Mr. Horn has a constitutional right to defend himself. This right has been typically recognized under the Fifth Amendment's due process clause.[1] The right of an accused in

---

[1] It has also been recognized under the Compulsory Process Clause recognizing that the defendant's right to obtain witnesses in his favor trumps certain evidentiary rules. *Washington v. Texas*, 388 U.S. 14 (1967) ) (defendant's right to obtain witnesses in his

a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the accusations. *Chambers v. Mississippi*, 410 U.S. 284 (1973). In *Chambers*, the Supreme Court concluded that the defendant's due process right to present a defense outweighed a state rule against hearsay evidence that had been invoked to exclude testimony.

The issue anticipated here is that Justin Herman provided information to Ian Horn in response to questions or events. Whether Mr. Herman's communications to Ian Horn contain truthful statements is irrelevant to Mr. Horn's defense. They may be true. They may not be true. Regardless, the evidence will be offered by Mr. Horn, not to prove the ruth of the matter asserted,[2] but to show that Herman provided explanations that informed Mr. Horn and contributed to Horn's subjective understanding of the events and transactions in which Herman was engaging and for which he had elicited and obtained Mr. Horn's assistance in escrowing funds. Offense elements, and therefore central issues in the case, include whether the government can prove that the only reasonable view of the evidence is that Mr. Horn harbored the fraudulent intent that the government alleges, and that he shared the conspiratorial objective to defraud. Therefore, emails containing information provided to him is critical evidence as to what may have informed his understanding and intent.

---

favor trumps rule barring the defendant from presenting the testimony of his or her alleged accomplices and codefendants).

[2] Under F.R.E. 801(c)(2), if the party is not offering the statement to prove the truth of the matter asserted in the statement, it is not hearsay.

For example, Herman had arranged to have $80,000 wired into Horn's BMO bank account for Horn to escrow and then distribute according to Herman's instructions. BMO bank froze Horn's account that contained escrow funds that Herman had directed be wired out by Horn to facilitate Herman's transactions. When Herman inquired about the status of the funds, Horn informed Herman that "bank corporate security has intervened. There is hold on my account. No funds are available."

In response, Herman began repeatedly pestering Horn about the frozen funds – providing information that demonstrates Horn's lack of knowledge about the entire situation. Text messages, one after the other, with no response from Horn include:

> 12/26/2014
>
> > Funny legit business gets stopped.   . . .
> >
> > Bob Mitchell is source of funds ... Funds clean
> >
> > He gathered funds from his fellow shareholders to start venture
> >
> > Mr. Perry CEO has contributed to funds
> >
> > His name is Michael perry
> >
> > Valid purchase for ecmz - Eco emissions
> >
> > $ came from Wells Fargo
> >
> > Funds originate bob Mitchell's account
> >
> > Any word????
>
> 12/29/2014
>
> > Good morning. Thank you for trying to solve this mess this am.

>    Any word????

On December 30, the pestering continued:

>    12/30/2014
>
>    Ian, BMO should know that there is deal regulatory and potential tax consequences regarding this money. It is critical that this money is released tomorrow. I know you are doing all that you can. Thank you and forgive me but my position is becoming very uncomfortable.
>
>    12/31/2014
>
>    Ian, please call the bank early this am
>
>    ????
>
>    ????? Please respond
>
>    Subject: deal    Many attachments ECMZ letter to Horn Bank
>    Body: call me in the am, when you can… thanks

At this point, on January 1, 2015, Herman began sending Horn a host of documents related to three apparent deals for the apparent purpose of providing Horn and the bank with additional information to obtain the release of the escrow funds. After he received these documents form Herman, Horn replied,

>    1/1/2015
>
>    Need to resend emails. They print too light. Need to be darker. Don't forget, bank wants e vidence of why transfers had to go through me. A valid transaction is important. But it is only one asoect. They want to know why I am involved. Why am I necessary? How am I part o f this deal. Why is money coming to me first for transfers? Why not direct to parties receiving funds? Also , transfers are to evine, intrepid and eureka. Not you petsonally. I wil l be away tommorow. I have email for person at bank.

Herman replied the next day:

4

1/2/2015

> Ian,
> You are involved for two main reasons. One is the convenience of a central point, where both documents and money can be deposited. This allows the transition of control in terms of officers and regulatory issues. You have undated resignations because of this bank problem. Also, the delay has negatively impacted regulatory issues (change of control with the State of Delaware and OTC Markets. Everyone felt more comfortable with an attorney in middle of a transaction. Also, this convenience made some of the outgoing shareholders more comfortable as they were on vacation ( only available through email) and sending their new bank coordinates was going to have to wait. They felt comfortable with money sitting with you.
> 1) Eureka is and represents a large control block of shares. Tom Crom is the outgoing CFO and a large shareholder.
> 2) Evine is a large shareholder. The outgoing CEO Larry Levine is the owner of Evine.
> 3) Intrepid will become a very large shareholder of the new company via several transactions, including this one via the sale of technology (patented BioGrow system) and oil leases.
> The second reason for you to be involved is that eventually in January, I hope you will be able to write the initial disclosure to OTC Markets. This document requires an attorney, and it just makes it easier to have an attorney involved from the start, who has a relationship with the parties, and knowledge of the overall transactions.
> I will resend the documents.
> I would like to know if they have filed a SAR. Though i don't really care, as this is a legitimate transaction that THEY ARE HARMING AND CREATING LIABILITY FOR THEMSELVES AND EVERYONE ELSE. SEND BACK THE DAMN FUNDS OR SEND THE WIRES OR CALL FOR A FUCKING SPECIAL PROSECUTOR FROM THE FBI, CIA, NSA, OCC, KGB
> We need to get this done.
> Justin=

This explanation was followed by another lengthy explanation by Justin Herman:

> Ian,
> The situation with your bank is becoming dangerous. The underlying transaction that they questioning is very simple. Its no different than the sale of a house with one exception. Unlike a real estate transaction, in this transaction, an attorney is

> needed to file subsequent disclosures about the transaction. These disclosures are with OTC Markets and the SEC. Those importance of those disclosures are why I am so concerned with the conduct of your bank. We are currently experiencing heightened regulatory and other liability risks. I will list some but, not all of the risks for you.
> 1) Change of control of a public vehicle requires a public filing with OTC Markets and the SEC. Public shareholders have a RIGHT to know and the regulations demand it.
> 2) Administrative and State regulatory issues in Delaware
> 3) Oil and Gas filings with the commission in the States of Wyoming, Kansas, Pennsylvania, and Oklahoma.
> All of the above filings have time limitations or license issues that surround them. Ian this deal is becoming fragile because of the bank's conduct. The transaction is legal in every single way. This transaction is over regulated before the bank got involved. This transaction requires regulatory approval in 5 states with several different agencies and it also involves both OTC Markets and the SEC. Every inch of this transaction is and will continue go under the public microscope.
> The deal involves several merger and acquisition actions. If this deal is not completely consummated, there will undoubtedly be several lawsuits involving many parties, sadly including you and the bank as well. The civil lawsuits really are secondary to the potential securities issues and the liability that this delay has cause. The securities issues involve not just public shares, but, also oil and gas securities.
> Ian, I have great respect for you and BMO Harris. You are a wonderful attorney and BMO is a world class transaction. However, this transaction has the potential to tarnish the reputations of all. The worst part of that is that there is no reason for these issues.  This situation needs resolution today.
> I hope to have a response from you shortly.
> Take care,
> Justin Herman
> Intrepid Resources, CEO

The fact that Justin Herman would provide such an explanation, and believe it to be necessary at all, is the point.  These lengthy explanations are directly relevant to demonstrate Horn's lack of knowledge.  True or not, these communications were sent by Justin Herman to Ian Horn.  The inference is readily apparent: if Herman found it necessary to explain as he did, then Ian Horn did not theretofore possess knowledge as to what

6

Herman was doing in these business transactions. If he did not have the knowledge as to what was going on, it is far less likely that he shared the specific conspiratorial objective with which he is charged. These communications are critical and contemporaneous evidence on the central issue in the case.

After additional communications that Herman sent to the bank's employee, Jillian Hickory, Ian Horn sent a January 5, 2015, email to Herman:

what is bob mitchell's involvement

This question reflects the state of Mr. Horn's knowledge and would not be used to prove the truth of what Bob Mitchell's involvement might be. The salient evidence is the fact that he asked the question, not the truth of any statement contained in it.

Mr. Horn is concerned that the government may seek to somehow limit Mr. Horn's presentation of his defense by claiming that the communications by Mr. Herman are self-serving hearsay[3] –as to Herman-- and therefore seek to preclude their admission at trial. Regardless of whether this is correct as to Mr. Herman, the evidence is, of course, admissible as to Defendant Horn because it is not offered to prove the truth of the assertions made by Mr. Herman. *If* the government is correct that Herman's communications to Horn

---

[3] The issue often arises in the context of F.R.E.801(d)(2)(E) which excepts so-called "co-conspirator statements" as non-hearsay, benefitting the government which can introduce such statements. But defendants cannot use the same rule to obtain the admission of self-serving hearsay.

are self-serving hearsay as to Herman,[4] it may be that the Court will need to provide the jury with a limiting instruction advising that the jury may consider the evidence as it may have affected Ian Horn's knowledge and understanding and thereby inform the issue of Horn's intent, but that it may not consider particular evidence for the truth of what Mr. Herman represented in the communication. But allowing the evidence in as to Mr. Horn is absolutely necessary to avoid violating Mr. Horn's due process rights to present his defense.

In summary, the communications are not hearsay at all as to Mr. Horn because they will not be offered to prove the truth of the matter asserted, but instead to show Mr. Horn's lack of knowledge and lack of shared conspiratorial purpose. To be clear, Mr. Horn will object to any government efforts to diminish or compromise his constitutional right to present a defense to the allegations through such witnesses as he may choose –whether or not the evidence might create evidentiary issues as to other defendants.

WHEREFORE, Defendant Ian Horn requests the Court to issue an order approving in advance the admissibility of such evidence as described herein.

DATED this 9th day of September, 2021.

        IAN HORN, by

        */s/ Thomas B. Jubin*
        Thomas B. Jubin
        Jubin & Zerga, LLC
        P.O. Box 943

---

[4] It is likely that the communications are generally admissible under the rule of completeness in any event.

Cheyenne, WY 82003<br>
(307) 637-4965<br>
tom@jubinzerga.com

## CERTIFICATE OF SERVICE

    This is to certify that this pleading was filed on September 9th, 2021, with the ECF system causing it to be served on all parties entitled thereto.

                                      *s/ Thomas B. Jubin*
                                      Thomas B. Jubin